1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DIANA M. MALDONADO,

11            Plaintiff,                    No. CIV S-07-1549 EFB

12        vs.

13   MICHAEL J. ASTRUE,
     Commissioner of Social Security,
14
              Defendant.              ORDER
15   _____/

16        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

17   ("Commissioner") denying her application for Supplemental Security Income ("SSI") under

18   Title XVI of the Social Security Act ("Act").  For the reasons discussed below, the court grants

19   plaintiff's motion for remand.

20   I.  BACKGROUND

21        Plaintiff, born April 14, 1971, applied for SSI on February 5, 2003,[1] alleging disability

22   since November 1, 1999, due to "[F]ybromyalgia, [G]raves [disease], [C]ushings [disease],

23   asthma, [and] acid reflux, depression."  Administrative Record ("AR") 93, 98.  Plaintiff stated in

24   _____

25        [1]  Plaintiff subsequently filed a second SSI application on January 14, 2005.  The
     applications were consolidated by the Commissioner for decision by the ALJ and hence by this
26   court.  AR 90.

                                            1

1  her application that she is unable to work because "I can not stand, sit for long periods of time, []

2  can not lift and sometimes I have no use of body parts because of pain or because of numbness."

3  *Id.* at 98.

4         Three administrative hearings were held to consider plaintiff's applications.  AR at 806-

5  898.  Pursuant to the first hearing, held August 13, 2004, the administrative law judge ("ALJ")

6  Antonio Acevedo-Torres issued a decision on December 20, 2004, finding that plaintiff is not

7  disabled.  *Id.* at 806-831, 53-59.  On April 1, 2005, the Appeals Council remanded the case to the

8  ALJ with instructions to give further consideration to the medical opinions, explain the weight

9  given to each, and to further consider plaintiff's residual functional capacity.  *Id.* at 85-86.  A

10  supplemental hearing was held on November 23, 2005, pursuant to which ALJ Acevedo-Torres

11  issued a new decision on February 27, 2006, again finding plaintiff not disabled.  *Id.* at 832-855,

12  41-48.  On April 28, 2006, the Appeals Council again remanded the case, directing the ALJ to

13  assess plaintiff's mental impairment pursuant to 20 C.F.R. § 416.920a, to give more thorough

14  consideration to the medical opinions, explain the weight given to each, to consider whether to

15  obtain medical expert and vocational expert evidence, and to reassess plaintiff's residual

16  functional capacity.  *Id.* at 88-91.  Another supplemental hearing was held on November 30,

17  2006, before ALJ Stanley Hogg, who, on February 21, 2007, issued the decision presently under

18  review, again finding plaintiff not disabled.[2]  *Id.* at 856-898, 9-22.

19

---

20      [2]  Disability Insurance Benefits are paid to disabled persons who have contributed to the
Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income ("SSI") is paid

21  to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq.*  Under both provisions,
disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to

22  "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) &
1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R.

23  §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The
following summarizes the sequential evaluation:

24

25      Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is
found not disabled.  If not, proceed to step two.

26      Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If

Plaintiff was born April 14, 1971, AR 93, has three minor daughters, AR 811, attended high school until tenth grade, and thereafter took some college classes. AR 809. She previously worked as a medical office assistant, from 1998 to 2001, and as a customer service assistant for a teleservice company, for six months in 2002, while at the same time working as a cashier at a Taco Bell. AR 99, 114, 123-130. Previous to these jobs, plaintiff worked for a few months in 2001 as a cashier at a Jimboy's Tacos; then as a customer service assistant at Pacific Bell for 2½ months, where she was let go because she failed part of the training test. AR 115. Plaintiff stated that she "tried to do 2 jobs but too much work, not enough sleep & she [her supervisor at Taco Bell] was already talking about letting me go because I hurt all the time and couldn't perform as well as some of the others." AR 114. Plaintiff thereafter left her job at Pacific Bell because "I couldn't move my hip therefore I couldn't sit or walk or stand without severe pain." *Id.*

At the first administrative hearing in 2004, plaintiff testified that she is unable to work because of back pain, depression and panic attacks. "The back pain is what started keeping me from working. And the depression and panic attacks now are adding to it. It's kind of like a, cyclical, my back hurts so I get depressed and I get depressed because my back hurts . . ." AR 813. Her back pain involves her "whole lower back. And it goes into my hips and my legs and

---

not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater,* 81 F.3d 821, 828, n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

my feet." AR 813-814.  Plaintiff described the pain as constant.  AR 815.  She stated that her back pain "started after [she] had a miscarriage about four or five years ago and [it] just got really, really bad the last couple of years."  AR 814.  Plaintiff is sometimes unable to move her hip.  AR 809, 828.  She testified that she was receiving sacroiliac "SI" joint injections approximately every 6 to 8 weeks; she was also going to physical therapy, pool therapy, and taking different medications and natural therapies.  AR 809.  Plaintiff had physical therapy for about year, and pool therapy twice.  AR 815-816.  The day before the hearing, plaintiff had her first medial branch pain block.  AR 810.  At home, plaintiff tries to reduce her pain with Vicodin, hot baths, Epsom salts, hot showers, and heating pads.  AR 814.  Plaintiff has been told by medical providers that she is not a candidate for surgery because "there's not anything to operate on."  AR 811.

Plaintiff testified that she has bipolar disorder, but the manic phases have disappeared with medication.  AR 823.  She has crying spells two or three times a month, lasting for a couple of days.  AR 824.  Plaintiff said that she has panic attacks sometimes when she is out by herself, like at the bank, or a grocery store, or at the doctor's office, or a church, particularly if she is with only strangers.  AR 820-822, 827.  Plaintiff testified that she has been receiving mental health treatment for about a year and a half.

Plaintiff also noted problems of numbness and edema in her hands.  AR 817.  She also has asthma, but it has been better the last few years since plaintiff began taking Singular.  AR 818.  Plaintiff typically uses an inhaler two or three times a day and, in the spring, uses her "pulmonary thing, the machine" three or four times a day for three or four months.  AR 819.

Plaintiff testified that she takes 10 or 12 medications, to treat "bipolar, pain control, reflex, asthma, allergies" and for birth control.

Plaintiff testified that she is 5'1" tall, and weighed 218 pounds.  AR 822.  She estimated that she could walk half a block, stand for 15 minutes, sit for 20 to 30 minutes, and lift five pounds.  AR 811.  She testified that on a typical day she gets up about 10 a.m., takes a shower to

4

1   relax her muscles, makes something to eat, then sits or lays in bed and watches TV.  She

2   described her activities as follows  from noon to 10 p.m.: "Lay in bed and watch TV.  I don't

3   really do anything.  If I need to take one of the kids somewhere I take them or if I need to go to

4   the store or whatever I, we, go."  AR 812.  Plaintiff stated that she has a car but she doesn't drive

5   much, explaining "I don't go anywhere unless I have to go like to the grocery store or to take

6   them [her children] to school [three miles away] or whatever."  AR 812-813.  "During the school

7   year I leave [the house] twice a day to go take, pick my kids up and take them to school. [] And

8   during the summer I haven't really gone anywhere.  I just, just recently put my daughter in a

9   daycare [] because they were bored. . ."  AR 820.  Plaintiff testified that she has difficulty

10  dressing, and gets dressed only two to three times a week.  AR 828-829.

11          Asked who does the housework, plaintiff answered, "The kids do most everything.  And

12  the stuff that they don't do my mom does or other friends or family members will come and help.

13  And my boyfriend . . . . [who] just recently quit, or, lost his job."  AR 813.  Asked what happens

14  if she tries to do chores, plaintiff answered:

15          I get, like in the bathroom I'll wipe the sink out and wipe the top of the, the back
            of the toilet off and do the mirror and then I'll sit down because my feet hurt or
16          my back hurts.  And then I'll go back in later and try to do something else.  So it
            takes me like probably three or four hours to clean just the bathroom . . . I can't
17          do the bathtub or the shower.  And sometimes I have trouble bending just to clean
            the toilet too because it is kind of low.  So my kids usually do most of that or my
18          mom or my boyfriend or whoever.

19  AR 825-826.  Asked how long a typical break would be if she was doing chores, plaintiff

20  answered: "Well, I usually break for like, probably 20 minutes because I'll watch something in

21  the middle, you know, like lay down and watch TV and then I get interested in it and then get

22  back up, you know, on a commercial or whatever."  AR 826.  Plaintiff testified that she helps her

23  12-year-old daughter cook three or four times a week.  AR 826-827.  Her daughter also does

24  most of the shopping.  AR 827.  A friend takes plaintiff's children to church.  AR 812.

25  ////

26  ////

Plaintiff testified that she has "lost all my friends.  And I just close myself off.  Close myself in my room and don't talk to anybody."  AR 824.  She stated that she never visits family members, and doesn't have any friends anymore.  *Id.*

At the November 2005 hearing, plaintiff testified that her main problems were depression and panic attacks.  AR 854.  She stated that she had been seeing a psychologist at UC Davis for almost three years.  *Id.*  Plaintiff stated that her "bipolar depression" was better since she stopped taking Lithium about a year before, and that she is trying to get better through counseling rather than medication.  AR 841.  Plaintiff testified, "I'm trying to work with counseling instead of taking medication.  I don't want to be reliant on the pills.  And the panic attacks is the same thing.  I want to learn how to deal with them, you know, like, like kind of like a school, try to teach myself how to deal with them or have the counselor teach me how to deal with them.  I don't want a pill."  AR 841.  Asked if this new strategy was plaintiff's idea or that of her counselor, plaintiff stated "Mine," but added "It's just beginning."  *Id.*

However, plaintiff testified that at least two days a week, she cries all day.  AR 840.  She testified that she gets panic attacks "whenever I go out" unless she can stay in the car, e.g., when she is picking up a child from school.  AR 838, 840, 842.  It helps to have someone come along, so she will take her mom or take her daughter, now age 15, out of school and take her to her medical appointments.  AR 839.  Asked how her daughter's school attendance was, plaintiff stated, "So far this year, I don't have an exact number but, I've gotten letters sent home from the school for her attendance they're going to start legal action."  AR 840.

Plaintiff testified that she continued to have significant pain in her lower back, but had good days about once a week, and bad days two to three times a week.  AR 843-844.  She takes Vicodin and Motrin, continues to get SI joint injections, and had received two radio frequency ablations of her nerves at L3, 4, and 5.  AR 845.  These treatments help anywhere from 10 to 70 percent.  AR 836.  Physical therapy made the pain worse, stretching exercises didn't really help, and heat helps about 50% but is temporary.  AR 844.  Plaintiff testified that she now has constant

neck pain that began two months previous.  AR 846.  The pain includes her head and the middle of her back.  AR 846-847.  Plaintiff testified that her doctors have told her she has fibromyalgia. AR 851.

Plaintiff also has pain in her left hip, which "aches and burns" and is "constantly hurting" and "tingles" if plaintiff stands too long or moves the wrong way, and she gets cramps in the hip. AR 847.  The pain is so bad three or four times a month that plaintiff won't go anywhere.  *Id.* Activities that aggravate her hip include trying to walk more than two blocks to the store, or trying to pick up or clean her home.  AR 848.  Plaintiff can't sweep or mop or vacuum because the repetitive motion hurts her shoulder and neck.  AR 848-849.  However, the numbness and swelling in plaintiff's hands has decreased.  AR 850-851.

Plaintiff testified that she spends a typical day "sleeping and watching TV."  AR 837, 836-838.  She testified that she regularly does her own laundry, and her children do their own laundry.  AR 851.  The grocery shopping is generally done by "my parents and my kids and my daughter's dad."  AR 852.  She stated that she hasn't needed help getting dressed in a couple of months, noting that "[I]t's not very often . . . it was pretty constant at first when all this started." AR 852.  However, plaintiff said she doesn't really get dressed everyday, "sweat pants and a t-shirt, you know, and house slippers."  AR 853.   Plaintiff testified that her older two children take the bus to and from school, while the youngest is transported by "[m]y daughter's dad or my parents or my friends drive us or I borrow their car if I need to."  AR 836-837.  Plaintiff no longer owns a car.  AR 837.  Plaintiff stated that she doesn't see her normal friends, that she doesn't want to go anywhere with them, that a couple of them had trouble with plaintiff's illness and had their own troubles to deal with.  AR 842.

Plaintiff estimated that she can walk "a couple of blocks maybe on a good day if I just had my shot and I have taken my medication."  She stated that she could stand about 15 or 20 minutes, and sit for 20 to 30 minutes.  She was not sure how much she could lift.  AR 837. She testified that she can lift a gallon of milk, and does so every day.  AR 849-850.

1    At the November 2006 hearing, as a preface to the vocational expert testimony, plaintiff

2    testified about her former work.  She described her past work, for three and a half years, as a

3    medical office assistant as follows:

> [W]e were called temp employees and what it is at [INAUDIBLE] Davis they
> have different clinics all around the hospital in the area and so it was just like you
> work a month in like pediatric, you work a month in orthopedics and, you know,
> no depending on where they need you.  So I worked in different clinics all around
> [INAUDIBLE] Davis and just everywhere.
>
> Basically we just served as reception.  You come in and you say, greet you, we
> ask for you[r] insurance card, check you in for your appointments, make sure your
> insurance is up-to-date, your address and phone number is up-to-date, let the
> doctors or the nurses know that you're here for your appointment, pull your
> medical chart, put your medical work for the day in your medical chart, give your
> chart up to the nurse.  If the medical doctor needs anything from you
> [INAUDIBLE] authorization for a procedure, you know, like a small procedure or
> [INAUDIBLE] a referral to another clinic for a bigger procedure.
> [INAUDIBLE] the nurses need.  Any kind of information like that.  Answer
> phones, [INAUDIBLE] and put any other information [INAUDIBLE].

13   AR 861-862.

14   Plaintiff also testified that she provided day care in her home for six months to a friend's

15   child when plaintiff had a newborn, and was trying to do homework and take care of her own

16   children and home.  AR 863.

17   Plaintiff testified that she never met her psychologist, Dr. Callahan, but met with his

18   intern, Danielle Doan for a year commencing July 14, 2004.  Treatment records were missing for

19   the period July 14, 2004 to December 8, 2005, and the ALJ stated that he would leave the record

20   open so that plaintiff's counsel could submit these records.  AR 893-897.

21   The administrative transcript, which comprises these multiple hearings and plaintiff's

22   many medical records, is nearly 900 pages in length.  Based on this information, ALJ Hogg

23   made the following findings in his February 21, 2007 decision:[3]

24

---

25   [3] Disability Insurance Benefits are paid to disabled persons who have contributed to the
Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income ("SSI") is paid
26   to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq*.  Under both provisions,

1.      The claimant  has not engaged in substantial gainful activity since
        February 3, 2003.

2.      The medical evidence establishes that the claimant has severe lumbar
        degenerative disc disease and osteoporosis, fibromyalgia, obesity, and
        nonspecific depressive disorder and panic disorder, but that she does not
        have an impairment or combination of impairments listed in, or medically
        equal to, one listed in Appendix 1, Subpart P, Regulations No. 4.

3.      The claimant's testimony regarding her stated limitations in her capacity
        to sit and stand as well as her other allegations regarding her impairments
        and any related limitations that would be inconsistent with the residual
        functional capacity found here, are not credited for the above stated
        reasons.

4.      The claimant has the residual functional capacity to perform the
        requirements of work involving a wide range of "light" exertion involving
        standing and walking for 6 to 8 hours, sitting for 6 to 8 hours, lifting and
        carrying from 10 pounds frequently to 20 pounds occasionally, and the
        various other demands of "light" work as defined in the regulations, and
        with further restrictions involving no dealing with the public or more than
        occasional interaction with co-workers or supervisors or more than a low

---

disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater,* 81 F.3d 821, 828, n. 5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Bowen*, 482 U.S. at 146, n. 5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

level of stress (20 C.F.R. § 416.945).

5.   The claimant is unable to perform her past relevant work.

6.   The claimant's residual functional capacity for the full range of light work is reduced by limitations indicated above.

7.   The claimant is 35 years old, which is defined as a younger individual (20 C.F.R. § 416.963).

8.   The claimant has a limited education (20 C.F.R. § 416.964).

9.   The claimant does not have any acquired work skills which are transferable to the skilled or semi-skilled work functions of other work (20 C.F.R. § 416.968).

10.   Based on an exertional capacity for light work, and the claimant's age, education, and work experience, section 416.969 of Regulations No. 16 and Rule 202.21, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

11.   Although the claimant's exertional limitations do not allow her to perform the full range of light work, using the above-cited rule as a framework for decision making, there are a significant number of jobs in the national economy which she could perform.  Examples of such jobs are: addresser clerk, assembly, and light housekeeping.

12.   The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. § 416.920(f)).

The Appeals Council denied review on June 4, 2007, and the ALJ's decision became the final decision of the Commissioner.  AR 4-6.

## II.  ISSUES PRESENTED

Plaintiff contends that the ALJ erred by (1) improperly assessing plaintiff's residual functional capacity, and (2) failing to sustain the Commissioner's step-five burden of demonstrating that plaintiff can perform other work that exists in significant numbers in the national economy.

## III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were

1   applied.  *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);

2   *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*,

3   180 F.3d 1094, 1097 (9th Cir. 1999).

4           The findings of the Commissioner as to any fact, if supported by substantial evidence,

5   are conclusive.  *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

6   more than a mere scintilla, but less than a preponderance.  *Saelee v. Chater*, 94 F.3d 520, 521

7   (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to

8   support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol.

9   Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

10          "The ALJ is responsible for determining credibility, resolving conflicts in medical

11  testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

12  2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

13  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

14  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

15  IV.  DISCUSSION

16          Plaintiff initially contends that the ALJ erred by improperly assessing her residual

17  functional capacity.  Pursuant to this contention, plaintiff asserts in pertinent part that the ALJ

18  failed to fully and fairly develop the medical record, contrary to the Appeals Council instruction,

19  by failing to obtain (I) the records of plaintiff's treating physicians regarding her physical

20  impairments; and/or (ii) the testimony of a medical expert.  The court finds the first argument

21  meritorious, warranting remand of this case for yet further consideration.  Accordingly, the court

22  does not reach the remainder of plaintiff's arguments concerning her residual functional capacity

23  or the ALJ's step-five analysis.

24          The Appeals Council instructed the ALJ, in pertinent part, to:

25          Give further consideration to the treating and examining source opinions pursuant
            to the provisions of 20 CFR 416.927 and Social Security Rulings 96-2p and 96-
26          5p, and the nonexamining source opinion pursuant to the provisions of 20 CFR

                                                    11

416.927(f) and Social Security Ruling 96-6p, and explain the weight given to such opinion evidence.  In so doing, *the Administrative Law Judge will request the treating source to provide additional evidence and/or further clarification of the opinions and medical source statements about what the claimant can still do despite the impairments (20 CFR 416.912).*[4]  *The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating source.*

. . . Further, if necessary, obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments (20 CFR 416.927(f) and Social Security Ruling 96-6p).

AR 89, 90 (emphasis added).

The ALJ noted at the November 2006 hearing that the record failed to contain plaintiff's U.C. Davis mental health treatment records for the period July 14, 2004 to December 8, 2005, and that he would leave the record open so that plaintiff's counsel could submit these records. AR 893-897.  No mention or request was made for further information from plaintiff's treating sources regarding her physical impairments or residual functional capacity,[5] and the

---

[4]  20 C.F.R. § 416.912 provides in pertinent part:

[T]o determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.

(1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. . . .

20 C.F.R. § 416.912(e)(1).

[5]  The Commissioner seeks to infer such request (and hence place responsibility on plaintiff's counsel) based on the ALJ's concluding statement to counsel, "[A]ny additional records from U.C. Davis, especially Ms. Doan (mental health provider), that's what I want to see." AR 897.  The court does not make the same inference.  While the Appeals Council stated

1    Commissioner does now contend that such information was ever received.

2            While it is not the role of this court to enforce Appeals Council's orders upon the

3    Commissioner's administrative law judges, this court must ascertain whether the ALJ's decision

4    reflects the application of proper legal standards and is supported by substantial evidence.  The

5    Appeals Council's conclusion that the missing treating records are material does bear on these

6    questions, particularly where, as here, the ALJ also concludes that the missing records from the

7    treating medical source are material to his decision.  Administrative law judges have an

8    independent duty to fully develop the record in social security cases, *DeLorme v. Sullivan,* 924

9    F.2d 841, 849 (9th Cir.1991), triggered by "[a]mbiguous evidence, or the ALJ's own finding that

10   the record is inadequate to allow for proper evaluation of the evidence," *Tonapetyan v. Halter*,

11   242 F.3d 1144, 1150 (9th Cir. 2001).  "The ALJ may discharge this duty in several ways,

12   including:  subpoenaing the claimant's physicians, submitting questions to the claimant's

13   physicians, continuing the hearing, or keeping the record open after the hearing to allow

14   supplementation of the record."  *Id.* at 1150.

15           Significantly, in evaluating plaintiff's residual functional capacity, the ALJ relied on the

16   assessments of nontreating and nonexamining sources due to the *lack* of such evidence from a

17   treating source.  The ALJ stated:

18           [B]ecause the record contains no medical source statement from any treating
             sources regarding the claimant['s] physical maximum sustained work capacity
19           the undersigned has given considerable weight to the assessments from the
             examining and reviewing medical sources.
20

21   AR 18 (emphasis added).  The ALJ then relied on the report of the consultative orthopedist, Dr.

22   Grace Hunter, O.D., who opined that plaintiff can perform light exertional work, AR 469-479,

23

24   that the ALJ could seek the assistance of counsel, the instruction was clearly directed to the ALJ.
     It is the ALJ, after all, who has a duty to develop the record.  *Armstrong v. Commissioner of*
25   *Social Security*, 160 F.3d 587, 589-90 (9th Cir.1998).  Moreover, the Appeals Council remand
     required that the ALJ seek information other than what was set forth in plaintiff's treating
26   records.

13

and the report of the consultative neurologist, Dr. Steve McIntire, M.D., who opined that

plaintiff can perform work between the light and medium exertional levels, AR 496-503.  The

ALJ further stated, inconsistently within the same paragraph, that he would *not* rely on the

assessments of the State Agency physicians because they limit plaintiff to sedentary work.  The

ALJ reasoned:

> Although the state agency's reviewing medical source found that the claimant was
> essentially restricted to sedentary exertional activity the undersigned gives greater
> weight to the medical source statements provided by the examining medical
> sources because those examining medical sources, both specialists in pertinent
> disciplines related to the claimant's impairments, were in a better position to
> personally observe the claimant's level of functioning rather than simply
> reviewing the results of someone else's examinations.

AR 18.  The State Agency physician opinion rejected by the ALJ concluded that plaintiff is not

only limited to sedentary work, which "is not inconsistent with her description of daily

activities," but that she is limited to occasional climbing, balancing, stooping, kneeling,

crouching, and crawling.  AR 308-315.  *See also* AR 170-172 (Medical/Vocational Decision

Guide apparently completed by an analyst for the Commissioner who concluded that plaintiff

was limited to sedentary work with limited public contact).

     The weight of the treating medical evidence generally supports plaintiff's subjective

complaints of pain.  The evidence from U.C. Davis that is already of record demonstrates

extensive treatments for pain, indicating that plaintiff's treating sources found her complaints

credible.  Although imaging studies appear generally unremarkable, *see, e.g.*, AR 706-715 (with

the exception of osteoporosis of the lumbar spine, AR 711), plaintiff was referred to the U.C.

Davis Pain Management Center for repeated left, then bilateral, sacroiliac joint injections *from

2003 to 2006*, AR 662-705, 710-711, 205, 241, 350-353, 372-375, 394-397, 438-441; received a

medial branch block, followed by radio-frequency *ablation* of medial branch lumbar nerves, in

2005, AR 699, 691-693; and obtained multiple prescriptions for the strong pain medications

Norco and Vicodin, as well as Ibuprofen (800 mg), and the muscle relaxant, Flexeril, AR 722-

744.

1         There is no record evidence of malingering, and hence plaintiff's credibility is critical to

2   the assessment of her residual functional capacity.  "Generally, a claimant's credibility becomes

3   important at the stage where the ALJ is assessing residual functional capacity, because the

4   claimant's subjective statements may tell of greater limitations than can medical evidence alone.

5   Social Security Rule (SSR) 96-7p (1996).  For this reason, the ALJ may not reject the claimant's

6   statements regarding [his] limitations merely because they are not supported by objective

7   evidence."  *Tonapetyan*, 242 F.3d at 1148 (citation omitted).  "Without affirmative evidence

8   showing that the claimant is malingering, the Commissioner's reasons for rejecting the

9   claimant's testimony must be clear and convincing."  *Morgan v. Apfel*, 169 F. 3d 595, 599 (9th

10  Cir. 1999) (citations omitted).  The gradual improvement of some of plaintiff's symptoms over

11  the course of the hearings generally supports her credibility, although the undersigned

12  acknowledges inconsistencies in the record.[6]  Absent an assessment by plaintiff's treating

13  sources concerning plaintiff's functional limitations, and a comparison of this assessment with

14  the others of record, the court is unable to determine whether the ALJ's reasons for discrediting

15  plaintiff's testimony – because her "complaints have been subjective in nature with little

16  corroborating objective medical findings that would reasonably support her stated level of pain

17  or other symptoms," AR 17-18, are clear and convincing.

18        Similarly, given that the treating evidence, as well as the assessments of the State Agency

19  physicians, weigh generally in favor of plaintiff, the court is unable to determine, absent a

20  functional assessment by her treating source, whether the ALJ's reasons for relying on the

21  consultative opinions are specific and legitimate and supported by substantial evidence in the

22  record.  The contradicted opinion of a treating or examining professional may be rejected only

23  for "specific and legitimate" reasons supported by substantial evidence.  *Lester v. Chater,* 81

24

25      [6]  In addition, plaintiff has provided written descriptions of her pain and daily activities are more clearly set forth than her testimony, *see* AR 117-122, 131-132, 139-142, 145-149, 151-152, and she has submitted two third party witness statements, by plaintiff's mother, AR 153-159, and by a friend, AR 133-138.

26

1   F.3d 821, 830 (9th Cir. 1995).

2          For the foregoing reasons, this case will be remanded for further development of the

3   record.  On remand, the ALJ shall directly request the U.C. Davis Pain Management Center and

4   U.C. physician Dr. Madeline Milton, M.D., *see*, *e.g.*, AR 662, to provide independent reports

5   setting forth the medical rationale and evidence for plaintiff's extensive pain treatments;

6   independent assessments of plaintiff's residual functional capacity, pursuant to completed

7   Physical Residual Functional Capacity Assessment forms; and any additional treatment notes

8   after July 2006.

9          The ALJ shall also obtain the services of a medical expert/advisor to provide an

10  independent review of the all the evidence, and offer an opinion as to plaintiff's residual

11  functional capacity which includes consideration of all plaintiff's supported limitations, both

12  physical and mental.  *See* 20 C.F.R. § 416.929 (b) ("At the administrative law judge hearing . . .

13  the administrative law judge . . . may ask for and consider the opinion of a medical advisor

14  concerning whether your impairment(s) could reasonably be expected to produce your alleged

15  symptoms"); SSR 96- 2p ("the ALJ . . . may need to consult a medical expert to gain more

16  insight into what the clinical signs and laboratory findings signify in order to decide whether a

17  medical opinion is well-supported or whether it is not inconsistent with other substantial

18  evidence in the case record").  The advisor shall review the record and set forth his or her

19  supported opinion in writing, and thereafter testify at a further supplemental administrative

20  hearing that shall also include the further testimony of plaintiff and a vocational expert.

21  V.  CONCLUSION

22          Accordingly, IT IS HEREBY ORDERED that:

23          1.  Plaintiff's motion for summary judgment is denied;

24          2.  Plaintiff's motion for remand is granted;

25          3.  The Commissioner's cross-motion for summary judgment is denied;

26  ////

16

1    4.  This matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g), for further

2  development of the record and further findings addressing the deficiencies noted above; and,

3    5.  The Clerk is directed to enter judgment for plaintiff in accordance with this order.

4  DATED:  September 30, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE